# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

BASKIM HOLDINGS, INC.,

    Plaintiff,

v.

TWO M, INC. and OMAR ALDABBAGH,

    Defendants.

Case No. 2:16-cv-01898-APG-GWF

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

(ECF No. 31)

    Plaintiff Baskim Holdings, Inc. licenses its "Babe's Cabaret" trademarks to strip clubs in New Orleans and New Jersey. The defendants operate a strip club in Las Vegas, Nevada called Babe's Cabaret and use the internet domain name www.babescabaretlasvegas.com. Baskim sent a cease and desist letter to the defendants requesting they stop using the Babe's Cabaret mark, but the defendants declined to do so. Baskim brings this action against defendant Two M, Inc. (doing business as Babe's Cabaret) and Two M's owner (Omar Aldabbagh) for trademark infringement, counterfeiting, and dilution; unfair competition; and cybersquatting.

    The defendants move for summary judgment, arguing that long before Baskim federally registered its marks, Two M used the "Babe's Cabaret" mark in good faith in a market that is geographically remote from Baskim's markets. They thus argue that under the so-called "Tea Rose" Rule, Baskim cannot enforce the federal registration against them. Alternatively, they argue that Baskim has no establishment in Nevada, so there is no likelihood of actual confusion under a similar principle announced in a Second Circuit case, *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358 (2d Cir. 1959).

    Baskim responds that while geographical remoteness is a factor to consider in determining likelihood of confusion, it is only one factor. According to Baskim, all of the other factors show a likelihood of confusion. Additionally, Baskim argues that summary judgment is inappropriate under the Tea Rose Rule because there are issues of fact about whether the defendants adopted

the Babe's Cabaret name in good faith and whether Las Vegas is geographically remote. Baskim argues that summary judgment is also inappropriate under *Dawn Donut* because there is a genuine dispute over whether Baskim is likely to expand into Las Vegas.

I deny the defendants' motion. Viewing the evidence in the light most favorable to Baskim, a reasonable jury could find a likelihood of confusion about whether the defendants' strip club is the Las Vegas branch of Baskim's "Babe's Cabaret."

**I. BACKGROUND**

In 2005, non-party RMDR Investments, Inc. began operating a strip club called Babe's Cabaret in New Orleans, Louisiana. ECF No. 44-1 at 3.[1] RMDR continuously used the mark until 2009, when RMDR was sold and subsequently assigned its rights in the Babe's Cabaret name to Baskim. *Id.* Baskim then licensed use of the name back to RMDR. *Id.* In February 2015, Baskim filed applications with the United States Patent and Trademark Office to register the "Babe's Cabaret," "Babe's NOLA," "Babe's NOLA Cabaret," and "Babe's Cabaret NOLA" marks in connection with exotic dancing. *Id.* at 4-5. All four applications were granted. *Id.*

Baskim has licensed the Babe's marks to other strip clubs, including one in Texas (which is no longer in existence) and another in New Jersey (which is still open). *Id.* at 5. Baskim also has attempted to expand into the Las Vegas market. *Id.* at 5-6. In 2014, 2016, and early 2017, Baskim considered opening clubs under the Babe's name or licensing the Babe's marks in Las Vegas. *Id.* at 6-7. According to Charles Bass, Baskim's president, one of these deals fell through after a representative from the entity with whom Baskim was negotiating discovered Two M's club was operating under the name Babe's Cabaret. *Id.* at 3, 6-7.

Baskim has advertised the New Orleans club through magazines and on the internet, both through its own website at www.babesnola.com and on third party websites like www.stripclublist.com. *Id.* at 9. Baskim has also used social media outlets like Facebook and Twitter, as well as more conventional advertising mediums like billboards. *Id.*

---

[1] Two M attaches a newspaper article to its reply which suggests the New Orleans location closed in January 2017. ECF No. 46 at 19-21. I do not consider this article because it is hearsay, is not authenticated, and was presented for the first time with the reply brief.

The defendants have operated a strip club in Las Vegas, Nevada called Babe's Cabaret since 2006, although it is not clear when and in what manner the defendants first publicly used the name in commerce. ECF No. 31 at 9; ECF No. 44-10 at 9, 13-15. Aldabbagh denies that when he selected the name he knew the Babe's Cabaret mark was being used by other strip clubs. ECF No. 44-10 at 11. The manager of his club, who recommended the name to Aldabbagh, also denies he knew the mark was being used by other strip clubs. ECF No. 44-11 at 8-9. The defendants' club caters mostly, but not exclusively, to local customers. ECF Nos. 31 at 10, 12; 44-11 at 16. Two M has registered the domain name www.babescabaretlasvegas.com. ECF No. 44-11 at 12. Two M has advertised its club using a billboard, Facebook, Twitter, Instagram, Snapchat, and on www.stripclublist.com. ECF Nos. 44-10 at 22; 44-11 at 12, 18.

According to Bass, he has been contacted by individuals who have confused the defendants' club with Baskim's clubs. In 2015, someone reached out to him in the mistaken belief that Baskim owned and operated Two M's club in Nevada. ECF No. 44-1 at 9. On another occasion during a convention in Las Vegas, Bass and his brothers were asked when they had opened a club in Nevada. *Id.* at 10. At that same convention, Bass was approached by others who also expressed surprise that Baskim had opened a club in Nevada. *Id.*

In June 2016, Baskim sent a cease and desist letter to Two M and offered to discuss licensing the Babe's Cabaret name. *Id.*; ECF No. 44-9. Two M responded that it would not change the club's name and it was not interested in a licensing deal. *Id.* This lawsuit followed.

## II. ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

Under the Lanham Act, infringement occurs when the alleged infringer's use of a trademark "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. §§ 1114(1)(a), 1125(a)(1)(A). To establish such a claim, the plaintiff must show: (1) it has a protectable trademark and (2) "the defendant's use of the mark or name creates a likelihood of confusion." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1198-99 (9th Cir. 2012).

"The touchstone for trademark infringement is likelihood of confusion, which asks whether a reasonably prudent marketplace consumer is likely to be confused as to the origin of the good or service bearing one of the marks." *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, --- F.3d ----, 2017 WL 3724419, at *3 (9th Cir. July 11, 2017) (quotation omitted). Courts use the so-called *Sleekcraft* factors to "guide the likelihood of confusion inquiry." *Id.* (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)). Those factors are: "(1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines." *Rearden*, 683 F.3d at 1199 (quotation omitted).

These factors are not necessarily of equal importance nor will all necessarily apply in every case. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1008 (9th Cir. 2001). The factors "are intended to function as a proxy or substitute for consumer confusion, not a rote checklist," and the determination "may rest on only those factors that are most pertinent to the particular case before the court," as well as any other relevant factors. *Rearden*, 683 F.3d at 1209. And "despite the important role that the *Sleekcraft* factors play in determining whether a likelihood of confusion exists, it is the totality of facts in a given case that is dispositive." *Pom Wonderful LLC*

*v. Hubbard*, 775 F.3d 1118, 1125 (9th Cir. 2014) (quotation omitted). The inquiry is factual in nature, and summary judgment therefore is not appropriate when a jury reasonably could conclude there is, or is not, a likelihood of confusion. *Downing*, 265 F.3d at 1008; *see also Rearden*, 683 F.3d at 1202 ("Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." (quotation omitted)).

**A. Tea Rose**

The Tea Rose Rule "is an affirmative defense separate and apart from the underlying infringement claim." *Stone Creek, Inc.*, 2017 WL 3724419, at *7. The Rule comes from two Supreme Court cases, *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403 (1916) (where the disputed mark was Tea Rose), and *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90 (1918). "The central proposition underlying the two cases is that common-law trademark rights extend only to the territory where a mark is known and recognized, so a later user may sometimes acquire rights in pockets geographically remote from the first user's territory." *Stone Creek, Inc.*, 2017 WL 3724419, at *7.[2]

Under the Rule and the Lanham Act, a defendant's common law rights in a mark "are not wiped out merely because [the plaintiff] later filed a federal registration." *Id.* Federal registration presumptively entitles the registrant to nationwide protection. 15 U.S.C. § 1057(b). However, the "Lanham Act preserves legal and equitable defenses that could have been asserted prior to registration." *Stone Creek, Inc.*, 2017 WL 3724419, at *7 (citing 15 U.S.C. § 1115(a)). Thus, "already-established common-law rights are carved out of the registrant's scope of protection." *Id.* (citing 15 U.S.C. § 1115(b)(5)). As the Ninth Circuit recently described it, "the geographic scope of a senior user's rights in a registered trademark looks like Swiss cheese: it stretches

---

[2] *See also*, *Theodore Rectanus Co.*, 248 U.S. at 100 ("It would be a perversion of the rule of priority to give it such an application in our broadly extended country that an innocent party who had in good faith employed a trade-mark in one state, and by the use of it had built up a trade there, being the first appropriator in that jurisdiction, might afterwards be prevented from using it, with consequent injury to his trade and good will, at the instance of one who theretofore had employed the same mark, but only in other and remote jurisdictions, upon the ground that its first employment happened to antedate that of the first-mentioned trader.").

throughout the United States with holes cut out where others acquired common-law rights prior to the registration." *Id.* Thus, where two parties use the same mark in areas of the country "remote" from each other, it may be that one user has priority in one area, "while another user has priority over the very same mark in a different area." *Grupo Gigante SA De CV v. Dallo & Co.*, 391 F.3d 1088, 1096 (9th Cir. 2004).

To take advantage of the Tea Rose Rule as an affirmative defense to infringement, the defendant bears the burden of establishing (1) "good faith use" (2) "in a geographically remote area." *Stone Creek, Inc.*, 2017 WL 3724419, at *7. Good faith means the defendant did not have actual or constructive knowledge of the senior user's prior use. *Id.* at *7, 9 (stating the Rule "operates to protect a junior user who unwittingly adopted the same mark and invested time and resources into building a business with that mark"); *see also* 15 U.S.C. § 1115(b)(5). As to geographic remoteness, "the point of this doctrine is that in the remote area, where no one is likely to know of the earlier user, it is unlikely that consumers would be confused by the second user's use of the mark." *Grupo Gigante*, 391 F.3d at 1096-97. Thus, like infringement, the touchstone of this affirmative defense is likelihood of consumer confusion. *See Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1067 (9th Cir. 2006) ("The principal role of trademark law is to ensure that consumers are able to identify the source of goods.").

Here, the defendants began using the Babe's Cabaret mark in 2006 (or possibly 2007) in Las Vegas, long before Baskim federally registered its marks and in a location that could be considered geographically remote from where Baskim's licensees operated in other parts of the country. The Tea Rose affirmative defense thus is available to the defendants.

However, I deny the defendants' motion because Baskim has presented evidence raising a genuine dispute under the facts and circumstances of this case about whether Las Vegas is "geographically remote" from New Orleans such that there is no likelihood of confusion. Although the two cities are well over a thousand miles apart, Baskim has presented evidence from which a reasonable jury could find that consumers may be confused that a Babe's Cabaret strip club in Las Vegas is a branch of Baskim's Babe's Cabarets.

1   For years, Baskim and its licensees have continuously used the marks in relation to
2   locations in New Orleans and elsewhere and have advertised using those marks. *See, e.g.*, ECF
3   No. 44-1 at 5, 7-9.  The defendants use Baskim's mark "Babe's Cabaret" and offer identical
4   services as a strip club. *See Stone Creek, Inc.*, 2017 WL 3724419, at *4 (stating "identical marks
5   paired with identical goods can be case-dispositive" in a likelihood of confusion analysis).  The
6   parties use the same marketing channels, including social media and www.stripclublist.com.
7   They also both advertise on the internet using domain names that use the Babe's name along with
8   the city in which they are located.

9   Baskim has presented evidence that it has attempted to expand into the Las Vegas market
10  and was thwarted once due to the defendants' use of the "Babe's Cabaret" mark.  Neither side has
11  presented evidence as to how discerning those who frequent strip clubs are about the branding of
12  the clubs.  But Baskim has presented evidence that others in the industry were actually confused
13  about whether the defendants' club was affiliated with Baskim. *See Rearden*, 683 F.3d at 1214
14  (stating evidence that non-consumers were confused may be relevant to show consumer
15  confusion where non-consumers' confusion "could create an inference that consumers are likely
16  to be confused" or "could influence consumers").  Viewing this evidence in the light most
17  favorable to Baskim, a reasonable jury could find under the totality of the circumstances that
18  consumers could be confused that the defendants' club is the Las Vegas branch of Baskim's
19  "Babe's Cabaret" clubs.  Consequently, the defendants have not established they are entitled to
20  judgment as a matter of law on their Tea Rose affirmative defense.  I therefore deny this part of
21  their motion.

**B.  *Dawn Donut***

23  The defendants raise a similar defense that is named after a Second Circuit case: *Dawn
24  Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358 (2d Cir. 1959).  Under *Dawn Donut*, "if the
25  use of the marks by the registrant and the unauthorized user are confined to two sufficiently
26  distinct and geographically separate markets, with no likelihood that the registrant will expand his
27  use into defendant's market, so that no public confusion is possible, then the registrant is not

entitled to enjoin the junior user's use of the mark." *Id.* at 364 (footnote omitted). The Ninth Circuit appears to have recognized the principles in *Dawn Donut*. *See Mister Donut of Am., Inc. v. Mr. Donut, Inc.*, 418 F.2d 838, 844 (9th Cir. 1969) ("We hold that where a federal registrant has expanded its business to the point that the use of the conflictingly similar marks by the registrant and the unauthorized user are no longer confined to separate and distinct market areas and there is established the likelihood of public confusion, the federal registrant is entitled under the authority of the Lanham Act to injunctive relief." (citing *Dawn Donut*, 267 F.2d at 365)).

I deny the defendants' motion under *Dawn Donut*. Baskim presented evidence from which a reasonable jury could find that there is a likelihood that Baskim will expand into the Las Vegas market given its prior exploration of the possibility, including as recently as earlier this year. Additionally, like the Tea Rose Rule, *Dawn Donut* is based on the concept that when two entities using the same mark operate in distinct geographic areas, there may be no likelihood of consumer confusion. As discussed above, viewing the evidence in the light most favorable to Baskim, a reasonable jury could find a likelihood of confusion. I therefore deny the defendants' motion.

### III. CONCLUSION

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment **(ECF No. 31) is DENIED**.

DATED this 25th day of September, 2017.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE